UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| WASTE ACTION PROJECT,<br><br>Plaintiff,<br>v.<br><br>CONTINENTAL MILLS, INC.,<br><br>Defendant. | ) ) ) ) ) ) ) ) ) | No. 2:26-cv-00051-JHC<br><br>CONSENT DECREE |

## I. STIPULATIONS

WHEREAS, Plaintiff Waste Action Project filed a complaint on January 7, 2026 (Dkt. 1) against defendant Continental Mills, Inc. ("Continental Mills") alleging violations of the Clean Water Act, 33 U.S.C. § 1251, *et seq*., relating to discharges of stormwater and other pollutants from Continental Mills' facility at or about 7851 South 192nd Street, Kent, WA 98032-1131 (the "Facility"), and any contiguous or adjacent properties owned or operated by Continental Mills, to Mill Creek and Springbrook Creek, and seeking declaratory and injunctive relief, civil penalties, and attorneys' fees and costs.

WHEREAS, Waste Action Project and Continental Mills (the "Parties") agree that settlement of these matters is in the best interest of the Parties and the public, and that entry of this Consent Decree is the most appropriate means of resolving this action.

WHEREAS, the Parties stipulate to the entry of this Consent Decree without trial, adjudication, or admission of any issues of fact or law regarding Waste Action Project's claims or allegations set forth in its complaint and its sixty-day notice.

DATED this ____ day of June, 2026[1]

| | |
|---|---|
| CONTINENTAL MILLS INC. | WASTE ACTION PROJECT |
| By ________________________ | By ________________________ |
| Robert Dilworth<br>Chief Financial Officer | Greg Wingard<br>Executive Director |

## II. ORDER AND DECREE

THIS MATTER came before the Court upon the Parties' Joint Motion for Entry of Consent Decree and the foregoing Stipulations of the Parties. Having considered the Stipulations and the promises set forth below, the Court hereby ORDERS, ADJUDGES, and DECREES as follows:

1. This Court has jurisdiction over the Parties and subject matter of this action.

2. Each signatory for the Parties certifies for that party that he or she is authorized to enter into the agreement set forth herein and to legally bind the party or parties, their successors in interest, and assigns of the Parties.

3. This Consent Decree applies to and binds the Parties and their successors and assigns.

[[1] The Court notes that the date and signatures are included at Dkt. # 17-1.]

4. This Consent Decree and any injunctive relief ordered within applies to the operation, oversight, or both by Continental Mills of the Facility.

5. This Consent Decree is a full and complete settlement and release of all the claims in the complaint and the sixty-day notice and all other claims known or unknown existing as of the date of entry of the Consent Decree that could be asserted under the Clean Water Act, 33 U.S.C. §§ 1251-1387, arising from operation of the Facility (the "Claims"). Upon termination of this Consent Decree, these claims are released and dismissed with prejudice. Continental Mills' payment of attorney's fees and litigation costs set forth in paragraph 9f of the Consent Decree will be in full and complete satisfaction of any claims Waste Action Project and Smith & Lowney, PLLC have or may have, either legal or equitable, known or unknown, and of any kind or nature whatsoever, for fees, expenses, and costs incurred with respect to the Claims. Enforcement of this Consent Decree is Waste Action Project's exclusive remedy for any violation of its terms.

6. This Consent Decree is a settlement of disputed facts and law. It is not an admission or adjudication regarding any allegations by Waste Action Project in this case or of any fact or conclusion of law related to those allegations, nor evidence of any wrongdoing or misconduct on the part of Continental Mills or its contractors, customers, or other third parties. Continental Mills agrees to the terms and conditions identified below in paragraphs 7-9 in full and complete satisfaction of the Claims.

7. Upon entry of the Consent Decree, Continental Mills will implement the following injunctive relief:

a. Continental Mills will adhere to the requirements of the Clean Water Act at the Facility and the terms and conditions of the Industrial Stormwater

General Permit ("ISGP") and any successor or modified versions of the ISGP.

b. Continental Mills will, on a quarterly basis, electronically forward to Waste Action Project copies of all communications or documents provided to and/or received from Ecology in the prior quarter related to the Facility's compliance with the ISGP, along with written progress reports that explain Continental Mills' efforts to comply with the Consent Decree in the prior quarter, on a quarterly basis for the life of the Consent Decree.

c. Continental Mills will complete the following requirements applicable to stormwater discharge point DP-02:

i. Continental Mills will conduct monthly stormwater sampling at its bioswale (DP-02) beginning during the first month in which there is a discharge following entry of the Consent Decree, and until it has collected a total of twelve (12) monthly samples. Continental Mills will comply with all requirements of ISGP Condition S4 regarding sample collection, including reporting all sample results to Ecology on its quarterly discharge monitoring reports (DMRs) and sampling only during regular business hours. Continental Mills agrees to provide Waste Action Project with precipitation data from a reputable nearby gauge for any of those twelve months in which there is no discharge.

ii. Continental Mills will, within 30 days of entry of the Consent Decree, install pretreatment at conveyance structures which discharge to the DP-02 monitoring point, including: 1) catch basin inserts with zinc removal treatment media at all twenty-one (21) catch basins that connect to DP-02, and 2) downspout units with zinc removal treatment media at all seventeen (17) downspouts that drain to DP-02. Based on the results of the Source Evaluation and Control Report (defined and described in paragraph 7(g)), and unless the Source Evaluation and Control Report recommends discontinuation of such pretreatment in favor of equivalent or more robust pollution controls, Continental Mills will replace treatment media in whichever of these catch basin inserts and downspout units is recommended, in whatever periodic fashion is recommended in the Source Evaluation and Control Report.

iii. Continental Mills will maintain its bioswale in accordance with the Stormwater Management Manual for Western Washington, such that the bioswale acts as a polishing step in the treatment train.

d. Continental Mills will complete the following requirements applicable to stormwater discharge points DP-01, DP-03, and DP-04:

i. Continental Mills will continue quarterly stormwater sampling at monitoring points DP-01, DP-03, and DP-04 for the term of the Consent Decree, except that Continental Mills need not sample stormwater from monitoring points that it redirects to the sanitary sewer provided that Continental Mills notifies Waste Action Project that a discharge has been redirected to the sanitary sewer before discontinuing sampling.

ii. Continental Mills will, within 30 days of entry of the Consent Decree, complete a third-party survey to determine whether discharge points DP-01, DP-03, and DP-04 discharge to Springbrook Creek or Mill Creek, and the precise location of the ultimate discharge point. Continental Mills will transmit the survey results to Waste Action Project within 10 days of receipt with a copy to Ecology on that same date if the survey indicates that any of these points discharge to Mill Creek.

iii. Continental Mills will, within 30 days of entry of the Consent Decree, install pretreatment at conveyance structures which discharge to the DP-01, DP-03, and DP-04 monitoring points, including: 1) catch basin inserts with zinc removal treatment media at all five (5) catch basins, and 2) downspout units with zinc removal treatment media at all eighteen (18)

downspouts. Based on the results of the Source Evaluation and Control Report (defined and described in paragraph 7(g)), and unless the Source Evaluation and Control Report recommends discontinuation of such pretreatment in favor of equivalent or more robust pollution controls, Continental Mills will replace treatment media in whichever of these catch basin inserts and downspout units is recommended, in whatever periodic fashion is recommended in the Source Evaluation and Control Report.

e. Beginning 30 days after entry of the Consent Decree and continuing until submission to WAP of the Source Evaluation and Control Report, Continental Mills will monitor the perimeter, and all downward slopes along the perimeter, of the gravel parking/staging area to the west of Continental Mills' bioswale (Basin H) and take photographs at least weekly when there are one or more days with at least 0.25 inches of rainfall to document whether runoff discharges offsite, either via surface runoff or via subsurface discharge via seeps from compacted gravel.

i If Continental Mills discovers any discharges of stormwater associated with industrial activity offsite from this area, other than to DP-02, then it will: 1) immediately inform Waste Action Project, 2) add a representative stormwater sampling point at that location within fourteen (14) days of that

discovery, 3) submit a Sample Point Update form to Ecology within fourteen (14) days of that discovery which identifies the receiving water body, and 4) update its SWPPP to include the new sampling point, and identify additional best management practices (BMPs) it will implement at the area.

f. Regarding the apron area leading to its trash compactor (not including the immediate area around the compactor that is covered and drains to the sanitary sewer) (the "Apron Area"), beginning 30 days after entry of the Consent Decree and continuing until submission to WAP of the Source Evaluation and Control Report, Continental Mills will, on a weekly basis, inspect the Apron Area and vacuum sweep the entire Apron Area if any debris is observed, and spot clean any oil staining or organic residue in the Apron Area using methods described in Stormwater Management Manual for Western Washington BMP S434. These requirements are in addition to the minimum quarterly vacuum sweeping as already required by the ISGP.

g. Continental Mills will conduct a sitewide source control evaluation and produce a written report detailing recommendations for tailored BMPs necessary to reduce pollutant loading from onsite sources and consistently achieve ISGP benchmarks and numeric effluent limitations (the "Source Evaluation and Control Report").

i. The sitewide source control evaluation must: 1) include targeted source tracing sampling to determine specific onsite

sources of zinc in all basins that drain to surface waters of the state, and 2) measure and evaluate both dissolved and total zinc concentrations for all samples.

ii. A qualified stormwater professional, as defined by the ISGP, who is also a licensed professional engineer, must direct and supervise the evaluation and write, sign, and stamp the Source Evaluation and Control Report, which must include a certification that the Source Control and Evaluation Report proposes source control and/or treatment BMPs that are reasonably expected to meet the permit benchmarks and numeric effluent limitations based on sound engineering justification through the use of pilot plant data, results from similar installations, and/or scientific evidence.

iii. Continental Mills will provide Waste Action Project with a copy of the Source Evaluation and Control Report no later than October 31, 2026. Upon receipt, Waste Action Project may then provide written comments to Continental Mills within 7 business days, and Continental Mills will provide written responses to those comments in good faith within 7 business days. Continental Mills will pay $3,000 to cover expert and legal costs associated with Waste Action Project's comments.

iv. Continental Mills will implement the Source Evaluation and Control Report's recommendations no later than January 15, 2026.

h. Continental Mills will update its Stormwater Pollution Prevention Plan (SWPPP) as follows and provide Waste Action Project with a copy of the revised SWPPP:

i. Within 30 days of entry of the Consent Decree, sign and certify SWPPP in accordance with ISGP Condition S3.A.5.

ii. Make the following revisions to the Site Map figures as required by ISGP Condition S3.B.1:

a. Within 30 days of any discovery described in paragraph 7(e)(i) of this Consent Decree, as required by paragraph 7(e)(i) of this Consent Decree, to "Figure 3 – Storm System," add any new sampling location(s) for Basin H;

b. Within 30 days of submission to Waste Action Project of the Source Evaluation and Control Report, rename "Figure 5- Sheet Flow Map" "Figure 5 – Stormwater Flow Direction Map" and add the direction of stormwater flow using arrows to roofs;

c. Within 30 days of submission to Waste Action Project

of the Source Evaluation and Control Report, rename "Figure 6- Sheet Flow Map" "Figure 6 – Stormwater Flow Direction Map" and add the direction of stormwater flow using arrows to roofs and Basin H; and

d. Within 30 days of submission to Waste Action Project of the Source Evaluation and Control Report, add locations of pollutant sources discovered during the source control evaluation.

iii. Within 30 days of entry of the Consent Decree, make the following revisions to the Facility Description:

a. Add flow of goods and materials through the facility;

b. Add description of how and where forklifts are used; and

c. Add description to section 2.4.8 which identifies material external roof surface is composed of.

iv. Within 30 days of entry of the Consent Decree, make the following revisions to the Facility Description:

a. Update 5.2 to add all points of discharge, all sampling locations; and

b. Update 5.5.1 to explain that Continental Mills will not claim consistent attainment for the term of the consent decree.

8. Payment for Environmentally Beneficial Project: Continental Mills will pay a total of $850,000 (EIGHT HUNDRED AND FIFTY THOUSAND DOLLARS) to Rose Foundation for Communities and the Environment for the project(s) benefitting the Mill Creek and Green River watersheds, as described in **Exhibit 1** to this Consent Decree, to be paid in three installments as follows:

a. $283,334 will be paid within thirty (30) days of entry of this Consent Decree by the Court.

b. $283,333, will be paid within one (1) year of entry of this Consent Decree by the Court.

c. $283,333 will be paid within two (2) years of entry of this Consent Decree by the Court.

Payment will be made by ACH/Wire or via Bill.com using electronic payment instructions to be provided by Waste Action Project. Payment will include the following reference: "Consent Decree, Waste Action Project v. Continental Mills Inc. W.D. Wash. No. 2:26-cv-00051-JHC." Continental Mills will send copies of wire confirmations, if any, to Waste Action Project and its counsel, pursuant to the notice provisions in paragraph 18.

9. Within ten (10) days of entry of this Consent Decree by the Court, Continental Mills will pay $50,000 (FIFTY THOUSAND DOLLARS) to Waste Action Project to cover Waste Action Project's litigation fees, expenses, and costs (including reasonable attorneys and

expert witness fees) by check payable and mailed to Smith & Lowney, PLLC, 2317 East John St., Seattle, WA 98112, attn: Claire Tonry.

10. A force majeure event is any event outside the reasonable control of Continental Mills that causes a delay in performing tasks required by this Consent Decree that cannot be cured by due diligence. Delay in performance of a task required by this Consent Decree caused by a force majeure event is not a failure to comply with the terms of this Consent Decree, provided that Continental Mills timely notifies Waste Action Project of the event, the steps that Continental Mills will take to perform the task, the projected time that will be needed to complete the task, and the measures that have been taken or will be taken to prevent or minimize any impacts to stormwater quality resulting from delay in completing the task.

11. Continental Mills will notify Waste Action Project of the occurrence of a force majeure event as soon as reasonably possible but, in any case, no later than fifteen (15) days after Continental Mills becomes aware of the event. In such event, the time for performance of the task will be extended for a reasonable period of time following the force majeure event.

By way of example and not limitation, force majeure events include:

a. Acts of God (including but not limited to inadequate stormwater discharges during business hours such that, in the opinion of the qualified stormwater professional who Continental Mills has engaged to direct and supervise the sitewide source control evaluation required in Paragraph II(7)(g)(i), such evaluation cannot be completed and/or the certification

required in Paragraph II(7)(g)(ii) cannot be made within the prescribed time period), war, insurrection, or civil disturbance;

c. Earthquakes, landslides, fire, floods;

d. Actions or inactions of third parties over which Continental Mills has no or limited control;

e. Restraint by court order or order of public authority; and

f. Strikes.

12. This Court retains jurisdiction over this matter, while this Consent Decree remains in force. While this Consent Decree remains in force, this case may be reopened without filing fees so that the Parties may apply to the Court for any further order that may be necessary to enforce compliance with this Consent Decree or to resolve any dispute regarding the terms or conditions of this Consent Decree. In the event of a dispute regarding implementation of, or compliance with, this Consent Decree, the Parties must first attempt to resolve the dispute by meeting to discuss the dispute and any suggested measures for resolving the dispute. Such a meeting will be held as soon as practical but must be held within thirty (30) days after notice of a request for such a meeting to the other Party and its counsel of record. If no resolution is reached at that meeting or within thirty (30) days of the Notice, either Party may file a motion with this Court to resolve the dispute. The provisions of section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), regarding awards of costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, will apply to any additional court proceedings necessary to enforce the terms and conditions of this Consent Decree.

13. The Parties recognize that, pursuant to 33 U.S.C. § 1365(c)(3), no consent judgment

can be entered in a Clean Water Act suit in which the United States is not a party prior to forty-five (45) days following the receipt of a copy of the proposed consent judgment by the U.S. Attorney General and the Administrator of the U.S. Environmental Protection Agency ("EPA"). Therefore, upon the filing of this Consent Decree by the parties, Waste Action Project will serve copies of it upon the Administrator of the U.S. EPA and the U.S. Attorney General.

14. This Consent Decree will take effect upon entry by this Court. The Consent Decree terminates three (3) years after that date or upon completion of all requirements (whichever is later).

15. Both Parties have participated in drafting this Consent Decree.

16. This Consent Decree constitutes the entire agreement between the Parties. There are no other or further agreements, either written or verbal. This Consent Decree may be modified only upon a writing signed by both Parties and the approval of the Court.

17. If for any reason the Court should decline to approve this Consent Decree in the form presented, this Consent Decree is voidable at the discretion of either Party. The Parties agree to continue negotiations in good faith to cure any objection raised by the Court to entry of this Consent Decree.

18. Notifications required by this Consent Decree must be in writing and via email. For a notice or other communication regarding this Consent Decree to be valid, it must be sent to the receiving Party at the one or more email addresses listed below or to any other address designated by the receiving Party in a notice in accordance with this paragraph.

**If to Waste Action Project**:

Greg Wingard
Waste Action Project

gregWAP@earthlink.net

**And to**:

Claire Tonry
Katelyn Kinn
Smith & Lowney PLLC
claire@smithandlowney.com
katelyn@smithandlowney.com

**If to Continental Mills:**

General Counsel
Continental Mills, Inc.
Legal@krusteaz.com

**And to:**

Meredith Weinberg
Perkins Coie LLP
MWeinberg@perkinscoie.com

Any party identified in the notice provisions above may affect a change in the notice address by providing a notice complying with these provisions to all other parties listed. A notice or other communication regarding this Consent Decree will be effective the day it is transmitted. An email is effective the day it is sent so long as it is sent by 5 pm and on a business day, or else it is effective the following business day.

DATED this 12th day of August, 2026.

John H. Chun
JOHN H. CHUN
UNITED STATES DISTRICT JUDGE